**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

CHARLES H. DAVENPORT,

       Petitioner,

vs.

DOUGLAS FENDER,

       Respondent.

CASE NO. 1:20-CV-0561

DISTRICT JUDGE DAN AARON POLSTER

MAGISTRATE JUDGE AMANDA M. KNAPP

**REPORT AND RECOMMENDATION**

Petitioner Charles Davenport ("Petitioner" or "Mr. Davenport") brings this habeas corpus petition ("Petition") pursuant to 28 U.S.C. § 2254 in relation to his convictions for aggravated murder, murder, aggravated arson, and felonious assault in Cuyahoga County Common Pleas Court Case No. CR-15-600942-A, *State of Ohio v. Charles H. Davenport*.  (ECF Doc. 1.)  The Petition is deemed filed as of March 6, 2020, the date Petitioner placed it in the prison mailing system.[1]  (ECF Doc. 1 ("Petition"), p. 13.)  Respondent filed an Answer/Return of Writ (ECF Doc. 7), and Petitioner filed a Traverse (ECF Doc. 10.)  Respondent did not file a Reply.  The matter was reassigned to the undersigned Magistrate Judge on October 1, 2021.  For the reasons set forth in detail below, the undersigned recommends that the Court **DISMISS** the Petition.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Davenport's Petition was docketed in this Court on March 13, 2020.  (ECF Doc. 1.)

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Mr. Davenport's conviction and sentence as follows:

{¶ 9} The underlying facts of the case are undisputed. On November 4, 2015, Charles Winters was sitting with Sparks and a woman on Sparks's front porch when he saw Davenport walk past Sparks's home into an adjacent alley. Davenport, who neighbors stated had mental health issues, went into the alley to go to the bathroom. According to Winters, Sparks became upset and "start[ed] giving [Davenport] a hard time for what he was doing." Angered by Sparks's comments, Davenport began walking toward Sparks's front porch. Sparks "told [Davenport that] if he kept coming across the street, he would shoot him." Sparks then pulled out a gun, pointed it at Davenport, and threatened him. In response, Davenport "told him do not pull out a gun on me again, I will burn you in your sleep." Sparks then made a racially-charged insult toward Davenport, who then left.

{¶ 10} Later that afternoon, Carl Hardin, who lived in the neighborhood and knew Davenport and Sparks, saw Davenport at a nearby gas station. Hardin testified that Davenport told him to tell Sparks to stop threatening him or he was "going to do something to [Sparks]." Despite Davenport's statement, Hardin said that Davenport appeared "normal."

{¶ 11} Around 1:00 a.m. on November 5, Davenport knocked on the door of Tammy Mahone, who lived across the street from Sparks and her son, Ryan. According to Mahone, Davenport appeared "out of his mind" and asked her to have Ryan move his truck that was parked next to Sparks's house. Mahone testified that Davenport said he wanted to "burn up" Sparks's house "[b]ecause Rome pulled a gun on him." She stated that she told Davenport that Ryan was sleeping and also told him to "sleep off * * * whatever was bothering him." She testified that Davenport then left. Mahone testified, however, that Davenport returned a second time about an hour and a-half later and made the same request, which she again denied. She said that Davenport returned a third time, around 5:00 a.m., about two

2

hours after his second visit. She stated that Ryan answered the door during Davenport's third visit, moved his truck, and returned home.

{¶ 12} A few hours after the interaction between Sparks and Davenport and sometime in the early hours of November 5, Winters testified that he saw Davenport attempting to light Sparks's house on fire by "pouring gas on the bushes next to the house." Winters said that he told Davenport to stop and, after Davenport walked away, went back inside his home.

{¶ 13} Later that same morning, police officers were dispatched to Roman Sparks's house. When they arrived, the house was on fire and emergency personnel had transported Sparks to a nearby hospital, where he was pronounced dead. Evidence presented at trial established that Sparks died of smoke inhalation. Sparks's dog also died of smoke inhalation.

{¶ 14} Numerous officers testified that, upon arriving at the scene, Davenport, who was not wearing a shirt, emerged from the alleyway across the street from Sparks's house and admitted to setting the fire. While the officers initially ignored Davenport's statements, they eventually detained him after confirming that the house was occupied and after the crowd started to become "agitated" at Davenport. Around the same time, two of Sparks's relatives arrived on the scene and asked what happened, to which Davenport responded, "I did it, I poured gas on his porch, I lit it on fire and I stood there and watched them bring his dead body out."

{¶ 15} Later, but still at the scene, officers read Davenport his *Miranda* rights. Davenport then "said he already knew what was going on and [ ] broke everything down on what he did." Davenport explained that Sparks "pulled a gun on him for the second time." He said that Sparks "threatened [his] life with a pistol" and that he "was not going to play with anybody like that." Davenport stated that he threatened Sparks and then went to the gas station to get gas to start the fire. He said that he told multiple people in the neighborhood that he was planning to set fire to Sparks's house. He also freely admitted that he set the fire after making "several attempts" with paper and his shirt and that the fire was "premeditated."

{¶ 16} During his conversation with police, Davenport also stated that some of the police officers looked familiar because he was "in and out of nut houses." He told officers that he "was a cutter" and was "psychotic." He also informed the officers that he was just released from MetroHealth hospital less than a week earlier.

{¶ 17} Footage from police officers' body cameras shows that Davenport was calm and cooperative when officers detained him and when he explained what happened to the officers. Officers stated that Davenport did not attempt to flee and was not combative when police arrived on the scene.

3

{¶ 18} Officers also investigated the alley where Davenport claimed to have watched the house burn. There they found and collected Davenport's shirt, a gas can, a plastic bottle containing gasoline, and beer. Officers then transported Davenport to jail. At the jail, officers collected Davenport's clothes, which had traces of accelerant.

{¶ 19} Detectives from the Cleveland Homicide Unit subsequently interviewed Davenport later that day on November 5, 2015. During the interview, Davenport stated that he confessed to the police officers on scene, but that he did not "want to get too much further into it without a lawyer." He then stated that he "did the crime" and that there "was no use in hiding or trying to deny it." Davenport then asked the detective if he would receive capital punishment and stated that it would be "understandable. A life for a life, ya know." Davenport also told detectives that after he purchased the gas but before he lit the fire, he "started drinking real heavy" and did "a ton of cocaine."

*State v. Davenport*, 2018 WL 3601847, at *2-3 (Ohio Ct. App., 2018). (ECF Doc. 7-1 pp. 86-90.)

## II.    Procedural Background

### A.    State Court Conviction

On November 16, 2015, a Cuyahoga County grand jury charged Mr. Davenport with: two counts of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) and § 2903.01(B); murder in violation of Ohio Rev. Code § 2903.02(B); two counts of aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(1) and § 2909.02(A)(2); and felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1).  (ECF Doc. 7-1 pp. 5-7.)  Mr. Davenport pled not guilty to all charges.  (*Id.* at p. 8.)  Prior to trial, Mr. Davenport's defense counsel (then Reuben Sheperd and Fred Crosby) moved for appointment of independent psychological expert James J. Karpawich, Ph.D., to offer an opinion as to Mr. Davenport, who had a history of psychiatric treatment.  (*Id.* at pp. 17-19.)  The trial court granted the motion over the State's objection.  (*Id.* at pp. 20-24.)

In the weeks before trial, one of Mr. Davenport's court-appointed attorneys withdrew to accept another position and the second passed away.  (ECF Doc. 7-1 pp. 25-28.)  The trial court appointed two other attorneys to represent Mr. Davenport: Marcus Sidoti and Charles Morgan.

4

(*Id.*)  Dr. Karpawich reviewed Mr. Davenport's mental health, medical, alcohol, drug, and legal history, and opined that he was competent to stand trial.  *State v. Davenport*, 2019 WL 5079623, at *1 (Ohio Ct. App. 2019) ("Davenport II").  Both the state and defense counsel stipulated to Dr. Karpawich's opinion, but Mr. Davenport's counsel cautioned that the opinion addressed only his competency to stand trial and not the issue of his sanity.  *Id.*

On May 31, 2017, Mr. Davenport waived his right to a jury trial and elected to be tried by the bench.  (ECF Doc. 7-1 p. 37.)  Mr. Davenport twice moved for acquittal under Criminal Rule 29, which the court denied each time.  (*Id.* at pp. 39-40.)  After deliberation, the court found Mr. Davenport guilty on all six counts in the indictment.  (*Id.* at p. 41.)  Counts One (aggravated murder under O.R.C. § 2903.01(A)), Two (aggravated murder under O.R.C. § 2903.01(B)), Three (murder under O.R.C. § 2903.02(B)), and Six (felonious assault under O.R.C. § 2903.11(A)(1)) were merged, and the State elected to proceed on Count One.  (ECF Doc. 7-1 at pp. 41-42.)  Counts Four (aggravated arson under O.R.C. § 2909.02(A)(1)) and Five (aggravated arson under O.R.C. § 2909.02(A)(2)) were merged, and the State elected to proceed on Count Four. (ECF Doc. 7-1 p. 41.)  Mr. Davenport was referred to the court's psychiatric clinic for recommendations regarding the disposition of the case.  (*Id.*)

As journalized on July 20, 2017, the court sentenced Mr. Davenport to life in prison without parole eligibility for twenty-five years on Count One, and for five years on Count Four, to be served consecutively to Count One.  (*Id.* at p. 46.)  The court also entered judgment against Mr. Davenport for the costs of prosecution.  (*Id.*)  He received 618 days of jail time credit.  (*Id.*)

## B.    Direct Appeal

On August 17, 2017, with the assistance of counsel, Mr. Davenport appealed the judgment of the Cuyahoga County Court of Common Pleas to the Eighth District Court of

5

Appeals.  (*Id.* at p. 44.)  In his brief, he raised one assignment of error: "The Defendant was denied the effective assistance of counsel, in derogation of his rights under the Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution."  (*Id.* at p. 51.)  Specifically, Mr. Davenport asserted that he received ineffective assistance because his counsel failed to investigate a plea of Not Guilty by Reason of Insanity ("NGRI").  (*Id.*) According to Mr. Davenport, NGRI was "the only defense available" to him and "counsel's failure to investigate and pursue an insanity defense did not fall within the purview of trial strategy or tactics," and thus deprived him his right to effective assistance of counsel.  (*Id.* at p. 63.)  The State filed a brief in opposition.  (*Id.* at pp. 65-74.)

In a written decision dated July 26, 2018, the Eighth District Court of Appeals affirmed the decision of the trial court.  *Davenport*, 2018 WL 3601847.  The court determined that even though Mr. Davenport suffered mental health problems, the record did not show that he was unable to understand the difference between right and wrong, or that he did not understand the wrongfulness of his acts because of his mental health problems.  *Id.* at *5-6.  The Eighth District found that an NGRI plea did not have a reasonable probability of success, and Mr. Davenport's trial counsel's decision not to pursue an NGRI plea did not violate the Sixth Amendment of the U.S. Constitution or constitute ineffective assistance of counsel under *Strickland*.  *Id.* at *6.  One appellate judge dissented, opining "that counsel's failure to investigate and pursue an NGRI defense deprived [Petitioner] of his right to effective assistance of counsel."  *Id.* at *8.

## C.    26(b) Motion to Reopen

On May 17, 2019, Mr. Davenport filed a delayed application for reopening pursuant to App. R. 26(B) in the Eighth District Court of Appeals.  (ECF Doc. 7-1 pp. 143-64.)  In his brief, he acknowledged his application for reopening was due on October 24, 2018, in light of the

journalized judgment entry of July 26, 2018.  (*Id.* at p. 144.)  He explained that he was unable to file within the 90-day window because the issue he presented was not known to him by that date. (*Id.*)  According to Mr. Davenport, he was advised by his counsel that court costs and fines were waived, and he would be able to obtain commissary while incarcerated.  (*Id.* at p. 145.)  He asserted that it was not until April 2019 that he realized his counsel's advice was in error, and that his appellate counsel had failed to challenge the imposition of court costs.  (*Id.* at p. 146.) He also asserted that his failure to file a timely Rule 26(B) application to reopen was due to the Ohio Department of Rehabilitation and Correction's failure to notify him of his stated obligation. (*Id.*)  He asserted one assignment of error: "Appellate counsel was ineffective for failing to argue the trial court's abuse of discretion for imposing court costs where it was obvious that Appellant was indigent."  (*Id.* at p. 147.)  He provided an affidavit in support.  (*Id.* at pp. 152-53.)

The State opposed the application to reopen, arguing that the application was untimely by almost seven months, and that Mr. Davenport had failed to demonstrate good cause for the delay. (*Id.* at pp. 166-67.)  The State also argued that Mr. Davenport had failed to demonstrate that appellate counsel was constitutionally ineffective.  (*Id.* at pp. 168-70.)

The Eighth District Court of Appeals denied Mr. Davenport's application to reopen on October 9, 2019, finding that he had failed to establish "good cause" for filing his application many months after the expiration of the 90-day filing deadline, and additionally holding that his claim was not well-taken on the merits.  *Davenport II*, 2019 WL 5079623, at *2-3.  Mr. Davenport did not further appeal this decision.

7

**D.**     **Motion to File Delayed Appeal**

On August 13, 2019, Mr. Davenport, *pro se*, filed a motion for delayed appeal of the

appellate court's July 2018 decision to the Ohio Supreme Court.  (ECF Doc. 7-1 pp. 103-40.)

The motion for delayed appeal presented the following two Propositions of Law:

> **Proposition of Law I:** The Defendant was denied the effective assistance of
> counsel, in derogation of his rights under the Sixth Amendment to the United States
> Constitution, and Article I, Section 10 of the Ohio Constitution.
>
> **Proposition of Law II:** Appellant's counsel on appeal was ineffective for failing
> to challenge the sufficiency of evidence with respect to Appellant's convictions for
> aggravated murder, murder, and felonious assault, where the State failed to prove,
> beyond a reasonable doubt, each and every element of the offenses.

(*Id.* at pp. 111, 114.)

 In his brief, Mr. Davenport stated that he had prepared a timely appeal to the Ohio

Supreme Court and delivered his appeal papers to prison officials for mailing in August 2018.

(*Id.* at p. 109.)  Specifically, he reported that his appellate counsel mailed him a copy of the

Eighth District's decision in August of 2018, and that he prepared his appeal to the Ohio

Supreme Court and delivered his papers to the prison officials at the Marion Correctional

Institution for mailing to the Clerk of Courts that same month.  (*Id.*)  Mr. Davenport asserted that

this August 2018 appeal included the same propositions of law submitted in the motion for

delayed appeal. (*Compare id.* at pp. 112, 114 *with* pp. 109-10 *and* p. 139.)

On April 22, 2019, Mr. Davenport wrote a letter to the Clerk of Court for the Ohio

Supreme Court, inquiring as to the status of his appeal.  (*Id.* at pp. 110, 140.)  On April 25, 2019,

he received a reply from the Clerk's Office indicating that it had not received any filing

submissions from him since March 2017.  (*Id.* at pp. 110-11, 141.)  Mr. Davenport then wrote to

Marion Correctional Institution for confirmation that it had received his appeal papers in August

2018, but did not receive a response.  (*Id.* at p. 139).  Mr. Davenport attached a signed affidavit

to his motion for delayed appeal to support this accounting.  (*Id.* at pp. 138-39.)

The State did not respond to Mr. Davenport's motion for delayed appeal in the Ohio

Supreme Court.  On October 15, 2019, the Ohio Supreme Court summarily denied Mr.

Davenport's Motion for delayed appeal.  (*Id.* at p. 142; *see also State v. Davenport*, 132 N.E.3d

698 (Ohio 2019) (table)).

**E.  Federal Habeas Corpus Petition**

Mr. Davenport raises two grounds for relief in this Petition:

**GROUND ONE:**
The state court's adjudication overruling Petitioner's claims that he was denied the
effective assistance of counsel under the Sixth Amendment where counsel failed to
investigate a plea of Not Guilty by Reason of Insanity, resulted in a decision that
was contrary to, or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United States.

This issue was first presented in the "Brief of Appellant" filed by counsel in
Petitioner's direct appeal and in Petitioner's pro se "Motion for Delayed Appeal"
in the Supreme Court of Ohio.

(a) Supporting facts.
Petitioner had a well-documented history of mental illness. His conduct after the
crime—not only remaining on the scene, but loudly admitting his responsibility for
the crime to anyone within earshot—clearly demonstrate his inability to appreciate
the wrongfulness and gravity of his conduct.

In light of admitting to causing the fire, there was no possibility of an acquittal on
the arson charges. The only alternative was an acquittal by reason of insanity.
Petitioner's trial counsel, however, aware of Petitioner's mental history, chose only
to address the issue of competency. Counsel had a duty to investigate in the course
of his representation of a criminal defendant, and counsel's failure to investigate
the issue of insanity constituted ineffective assistance of counsel. Had counsel
conducted an investigation, there is a reasonable probability that Petitioner would
have been found not guilty by reason of insanity. Again, it was Petitioner's only
defense. Counsel's failure in this regards [*sic*] violated Petitioner's Sixth and
Fourteenth [Amendment] rights.

The state court should have reversed Petitioner's conviction and remanded the case for further proceedings. It's [*sic*] failure to do so is contrary to clearly established Federal law as determined by the [U.S.] Supreme Court in *Strickland v. Washington*. Habeas corpus should be granted.

**GROUND TWO:**
The state court's adjudication denying Petitioner's claim that counsel on appeal was ineffective for failing to challenge the sufficiency of evidence with respect to Petitioner's convictions for aggravated murder, murder, and felonious assault, where the prosecution failed to prove, beyond a reasonable doubt, each and every element of the offenses, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

This issue was presented in Petitioner's pro se "Motion For Delayed Appeal" in the Supreme Court of Ohio.

(a)  Supporting facts.
Although Petitioner admitted to setting the fire, he never admitted to police (or anyone else) that he "purposely" caused the victim's death. In fact, there was no evidence presented that Petitioner was aware that the victim was in the home at the time of the fire. An hour had passed between the altercation with Petitioner and the victim and Petitioner setting the fire. Under these circumstances, how could Petitioner know that the victim was home[?]

The lack of evidence moved trial counsel, at the conclusion of the State's case, to make a Crim.R. 29 motion for judgment of dismissal of the aggravated murder charges under Counts One and Two and felonious assault under Count Six, arguing that the evidence presented showed that Petitioner was "in a sudden fit of rage" and, therefore, did not establish that Petitioner acted "purposely" as required for the charge of aggravated murder. Trial counsel renewed his motion at the conclusion of the defense's case. Thus, the issue was preserved for appellate review and appellate counsel's failure to raise this dead bang winner constitutes ineffective assistance of appellate counsel.

(Petition pp. 14-15.)

### III.    Law & Analysis

Respondent offers three primary arguments in the Return of Writ: (1) the Petition must be dismissed because it was untimely filed under the applicable statute of limitations (ECF Doc. 7, pp. 9-16); (2) the Petition must be dismissed because Mr. Davenport's claims were procedurally

defaulted, barring federal habeas review (*id*. at pp. 16-22); and (3) the claims in the Petition fail on the merits (*id.* at pp. 22-29).  In response, Mr. Davenport argues: (1) the Petition should not be dismissed as untimely under the statute of limitations because "he is entitled to the benefits of the tolling provision set forth in 28 U.S.C. § 2244(d)(2)" (ECF Doc. 10, pp. 1-3); and (2) he is entitled to relief on the merits of Ground One of the Petition (*id.* at pp. 4-8).  Mr. Davenport's Traverse does not directly address Respondent's arguments regarding procedural default or the merits of Ground Two of the Petition.  (ECF Doc. 10.)

For the reasons set forth in further detail below, the undersigned finds that dismissal of the Petition is warranted because the statute of limitations has expired and both claims have been procedurally defaulted.  Accordingly, the undersigned will not address the merits of the Petition, and instead recommends that the District Court **DISMISS** the Petition with prejudice.

A.      **Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  Further, if an application for writ of habeas corpus involves a claim that

11

was "adjudicated on the merits in State court proceedings," the application "shall not be granted

unless the adjudication of the claim"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100

(2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the

petitioner.  *Cullen*, 563 U.S. at 181.

## B.      Whether Petition was Timely Filed Under the AEDPA Statute of Limitations

Respondent first argues that the Petition should be dismissed because it was filed after the

expiration of AEDPA's one-year statute of limitations.  (ECF Doc. 7, pp. 14-15.)  Specifically,

he contends the limitations period: began to run on September 10, 2018, the day after the

deadline for Mr. Davenport to appeal the Eighth District Court of Appeals' July 26, 2018

decision to the Ohio Supreme Court; ran for 340 days, until August 16, 2019, when Mr.

Davenport first pursued his delayed appeal in the Ohio Supreme Court; was tolled until October

15, 2019, when the Ohio Supreme Court denied his delayed appeal; and expired 25 days later, on

November 11, 2019.  (*Id.* at pp. 13-14.)  The Petition was not deemed filed until March 6, 2020,

four months later.  (Petition, p. 13.)

Mr. Davenport acknowledges that he did not file an appeal to the Supreme Court of Ohio

within 45 days of the Eighth District Court of Appeals' judgment, i.e., by September 9, 2018.

(ECF Doc. 10 p. 1.)  However, he argues that he delivered his notice of appeal to the prison

officials at Marion Correctional Institution ("MCI") in August 2018, which has "a notorious

reputation for mishandling inmates legal documents," and that MCI "created an impediment to filing a timely appeal in the Supreme Court of Ohio."  (*Id.* at p. 3.)  He also notes that he submitted two delayed state court filings after the July 2018 judgment – the May 17, 2019 application to the Eighth District Court of Appeals to reopen his appeal pursuant to Ohio App.R. 26(B) and the August 16, 2019 motion for delayed appeal to the Supreme Court of Ohio – and argues that the limitations period was tolled during these proceedings pursuant to § 2244(d)(2). (*Id.* at pp. 1-3.)  Based on the foregoing factors, he asserts that his Petition was not due until October 16, 2020.  (*Id.* at p. 3.)

In order to ascertain whether Mr. Davenport's Petition was timely filed, it must thus be determined: (1) whether the statute of limitations period was tolled during the pendency of Mr. Davenport's May 2019 Rule 26(B) application to reopen and/or August 2019 motion for delayed appeal; and (2) whether Mr. Davenport is entitled to equitable tolling due to the purported action/inaction of MCI prison officials with respect to Mr. Davenport's legal filings.

### 1.     Whether Statute of Limitations Was Tolled Under 28 U.S.C. § 2244(d)(2)

AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  As applied here, that period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  However, the statute further provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thus, under section 2244(d)(2), the one-year AEDPA statute of limitations is tolled for as long as a "properly filed" application for post-conviction relief or other collateral review is pending in the state courts.  *See Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003).  That tolling continues "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), and additionally "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review," *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (internal quotations omitted).  Section 2244(d)(2) does not toll the limitations period during the filing of a subsequent petition for certiorari to the United States Supreme Court because such a petition is federal and therefore "not a part of a 'State's post-conviction procedures.'"  *Lawrence v. Fla.*, 549 U.S. 327, 337 (2007) (quoting section 2244(d)(2)).

The U.S. Supreme Court specifies that a state court application may only be considered "properly filed" under section 2244(d)(2) if it was filed in compliance with applicable state procedural rules, including timing rules.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (finding petition was not "properly filed" for statutory tolling purposes when it was rejected by the state court as untimely); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  The Court in *Artuz* explained that "[a]n application is 'filed,' . . . when it is delivered to, and accepted by, the appropriate court officer for placement into the official record," but "is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including time limits for its delivery.  *Artuz*, 531 U.S. at 8 (emphasis in original).

Here, Mr. Davenport seeks statutory tolling during the pendency of two separate state court filings, his Rule 26(B) application to reopen his appeal in the Eighth District Court of Appeals, filed in May 2019, and his motion for delayed appeal to the Supreme Court of Ohio,

14

filed in August 2019.  (ECF Doc. 10 pp. 1-2.)  Respondent does not dispute that the statute of limitations was tolled during the pendency of his delayed appeal to the Supreme Court of Ohio, but argues that his Rule 26(B) application for reopening in the Eighth District "did not toll the running of the limitations period because it was dismissed as untimely."  (ECF Doc. 7 p. 14.)  The question before this Court is therefore whether Petitioner's Rule 26(B) application to reopen his appeal was "properly filed" for purposes of statutory tolling under section 2244(d)(2).[2]

When determining whether a state court application was timely filed, the federal court must look to the language of the applicable state court rule.  *See Board v. Bradshaw*, 805 F.3d 769, 773 (6th Cir. 2015).  If a state court rule contains time limitations, then "a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception."  *Pace*, 544 U.S. at 413.  "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of 2244(d)(2)."  *Pace*, 544 U.S. at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002) (alteration in original)).

Mr. Davenport's Rule 26(B) Application for Reopening was journalized on May 17, 2019, nearly ten months after the July 26, 2018 decision he sought to reopen.  (ECF Doc. 7-1 pp. 143-64.)  Ohio Rule of Appellate Procedure 26(B)(1) states, in pertinent part: "An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  The Eighth District Court of Appeals did not find good cause accounted for his

---

[2] The undersigned notes that a "delayed appeal" – such as a Rule 26(B) application to reopen – is not part of a "direct appeal," and therefore does not restart or delay the start of the one-year AEDPA statute of limitations. *Searcy v. Carter*, 246 F.3d 515, 519-20 (6th Cir. 2001).  "Instead, the statute of limitations is tolled only for that period of time in which the Rule 26(B) application is actually pending in the Ohio courts."  *Searcy*, 246 F.3d at 519 (quoting *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir.2000)).

delay in filing and accordingly denied the application to reopen on October 9, 2019. *Davenport II*, 2019 WL 5079623, at *2. Because Mr. Davenport's 26(B) application was not properly filed within ninety days and did not fit into the rule's "good cause" exception, statutory tolling under section 2244(d)(2) cannot be applied to this period.

In contrast, Ohio law does not establish specific time limits for filing a motion for delayed appeal. *See* Ohio S. Ct. R. Prac. 7.01(A)(4). Because "[l]eave to file a late notice of appeal can be sought at any time, even many years after conviction" under applicable rules, Mr. Davenport's motion for delayed appeal before the Supreme Court of Ohio was timely for purposes of AEDPA tolling. *See Searcy,* 246 F.3d at 519 (applying similar analysis under Ohio R. App. Pro. 5(A)); *Board*, 805 F.3d at 773 (same). Mr. Davenport's August 16, 2019 motion for delayed appeal to the Supreme Court of Ohio was accepted as properly filed and timely.

Applying statutory tolling rules under section 2244(d)(2), the limitations period began to run on September 10, 2018, the day after Mr. Davenport's appeal to the Ohio Supreme Court was due. It then ran for 340 days, until Mr. Davenport filed his delayed appeal with the Ohio Supreme Court on August 16, 2019. The delayed appeal stopped the running of the limitations clock until October 15, 2019, when the Ohio Supreme Court denied his delayed appeal. The statute of limitations began running again on October 16, 2019, with 25 days remaining for Mr. Davenport to file a habeas corpus petition in this Court. The one-year statute of limitations expired on November 11, 2019. Mr. Davenport did not file his Petition until March 6, 2020. Accordingly, the undersigned must conclude that the application of statutory tolling under 2244(d)(2) does not cure the untimely filing of the Petition.

16

**2.      Whether Equitable Tolling is Warranted**

In addition to seeking statutory tolling under section 2244(d)(2), Mr. Davenport appears to argue that the statute of limitations should be tolled because mishandling of inmate legal documents at MCI "created an impediment to filing a timely appeal in the Supreme Court of Ohio." (ECF Doc. 10 p. 3.) Effectively, he is arguing for equitable tolling of the AEDPA one-year statute of limitations due to action (or inaction) by MCI with respect to his legal mail.

The AEDPA statute of limitations may be equitably tolled. The U.S. Supreme Court has explained that the statute of limitations defense "is not jurisdictional" and "does not set forth an inflexible rule requiring dismissal whenever its clock has run." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotations omitted). Equitable tolling allows federal courts to excuse the statute of limitations bar where tolling is appropriate to "relieve hardships, which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Holland*, 560 U.S. at 650 (internal quotations omitted).

There are generally two forms of equitable tolling available in this context, traditional tolling and tolling based on "actual innocence." While Respondent briefly addressed the "actual innocence" tolling standard in the Return of Writ (ECF Doc. 7, pp. 15-16), Mr. Davenport has not asserted an "actual innocence" argument in support of equitable tolling (ECF Doc. 10 pp. 1-3). The actual innocence standard provides that a petitioner may be eligible for equitable tolling "if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 F.App'x. 606, 609 (6th Cir. 2012). "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S.

17

298, 324 (1995)) (emphasis supplied). Because Mr. Davenport has not asserted an actual

innocence argument in support of tolling the statute of limitations – arguing instead in his

Traverse that "the ample evidence against Petitioner made insanity the only possible defense for

him" (ECF Doc. 10 p. 5) – only the traditional equitable tolling standard is addressed herein.

To support equitable tolling, Mr. Davenport must show "'(1) that he has been pursuing

his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418).  Tolling is

evaluated on a case-by-case basis and must be "applied sparingly," with the petitioner retaining

the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v.

Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

In support of equitable tolling, Mr. Davenport argues in his Traverse:

> [A]fter the court of appeals affirmed the judgment and sentence of the trial court
> [Petitioner] prepared his notice of appeal, memorandum in support of jurisdiction,
> and affidavit of indigency and delivered the papers to prison officials at Marion
> Correctional Institution ("MCI") in August 2018 to be mailed to the Supreme Court
> of Ohio.  MCI has a notorious reputation for mishandling inmates legal documents
> . . . MCI is operated by the State. This created an impediment to filing a timely
> appeal in the Supreme Court of Ohio.

(ECF Doc. 10 p. 3.)  He offered a similar explanation in support of his motion for delayed appeal

to the Supreme Court of Ohio, stating that he had delivered his notice of appeal and related

papers to prison officials for mailing in August 2018, well in advance of the September 9, 2018

filing deadline.  (ECF Doc. 7-1, pp. 109-110.)  In support of this assertion, however, he relied

entirely on his own recent averment that he prepared the documents and "gave them to prison

officials sometime in August 2018 to mail to the Clerk for filing."  (*Id.* at pp. 138-39.)  He

explained that he then transferred to another institution in December 2018, and learned that the

Supreme Court of Ohio usually issued decisions in six to eight months.  (*Id.* at pp. 110, 138.)  He

18

provided evidence to demonstrate that he wrote to the Ohio Supreme Court in April 2019 – seven months after his notice of appeal was due – and learned that the Court had not received any submissions from him since March 2017.  (*Id*.)  He then reportedly reached out to the MCI mailroom for confirmation that he had delivered the papers in August 2018 and that the papers had been mailed to the Supreme Court of Ohio, but states that he did not receive a response.  (*Id.* at pp. 111, 139.)

In a nutshell, Mr. Davenport argues that he pursued his rights diligently by preparing a notice of appeal and delivering it to the MCI mailroom in time to be properly filed, and that the "extraordinary circumstance" preventing its timely filing was mishandling in the MCI mailroom. However, he does not provide a copy of the papers he purportedly delivered to the mailroom in August 2018, nor does he present any other evidentiary support for his claim that the materials were prepared and presented to the mailroom at that time.  The only evidence that the papers existed and were given to the mailroom in August 2018 is his own affidavit.  (*Id.* at pp. 138-39.) And the only evidence offered to demonstrate that the MCI mailroom mishandled the documents and interfered with their timely filing is the simple fact that the Ohio Supreme Court Clerk reported in April 2019 that no filings had been received since March 2017.  (*Id.* at p. 141.)

The undersigned finds that Mr. Davenport has not met the "ultimate burden of persuading the court that he . . . is entitled to equitable tolling." *Ata,* 662 F.3d at 741.  The only evidence he presents to show that he diligently prepared and submitted a timely notice of appeal is his own self-serving affidavit.  The Sixth Circuit has recognized that an unsupported and self-serving affidavit by a habeas petitioner is "inherently suspect" and "unreliable," and "must be reviewed with great skepticism." *Freeman v. Trombley*, 483 F.App'x. 51, 58-59 (6th Cir. 2012).  In the equitable tolling context, courts have found such evidence inadequate to support tolling.  *See,*

*e.g., Wiles v. Warden, Marion Correctional Institution*, No. 1:14cv685, 2015 WL 4467766, *6
(S.D. Ohio July 21, 2015) (finding self-serving affidavit of petitioner "inherently suspect" and
not "reliable" evidence of actual innocence for purposes of equitable tolling) (quoting *Freeman*,
483 F.App'x. at 58); *see also Hall v. XPO Logistics Freight, Inc.*, No. 3:21-cv-00727, 2022 WL
989084, *6 (M.D. Tenn. March 31, 2022) (finding equitable tolling for Title VII claim
unsupported where plaintiff's own declaration was only evidence that right to sue letter was not
timely delivered); *Carter v. Jack Daniel's Distillery*, No. 4:02-CV-001, 2002 WL 32059015
(E.D. Tenn. Nov. 26, 2002) (finding unsubstantiated and self-serving affidavit regarding receipt
of EEOC right to sue letter insufficient to establish delayed delivery of notice for purposes of
equitable tolling).

Here, Mr. Davenport's after-the-fact assertion that he prepared and submitted a timely
notice of appeal for filing must be weighed against the lack of evidentiary support for this claim.
For example, Mr. Davenport does not provide a retained copy of the filing, evidence of a
deduction from his account for postage, or prison mail records confirming receipt of the filing.
His unsubstantiated affidavit must also be weighed against the other evidence of record, which
reflects that he did not make any inquiry – with the Supreme Court of Ohio, the MCI mailroom,
or otherwise – regarding the status of his Supreme Court appeal until at least seven months after
the appeal was due for filing.

In this context, the undersigned concludes that Mr. Davenport has not met his burden to
demonstrate that extraordinary circumstances stood in the way of timely filing his habeas
petition despite his own diligent pursuit of his rights.  The undersigned accordingly finds that
Mr. Davenport is not entitled to equitable tolling of the statute of limitations.  Because the

Petition was filed more than three months after the expiration of the statute of limitations, the undersigned recommends that the District Court **DISMISS** the Petition as untimely.

**C.     Whether Claims in Grounds One and/or Two Were Procedurally Defaulted**

Although the statute of limitations analysis above warrants dismissal of the Petition, the undersigned will nevertheless proceed to address Respondent's second argument, that Grounds One and Two of the Petition must be dismissed based on procedural default.  (ECF Doc. 7 at pp. 20-22.)  With respect to Ground One – ineffective assistance of trial counsel for failure to investigate or raise an NGRI defense – Respondent argues the claim is procedurally defaulted because Mr. Davenport did not file a timely appeal with the Ohio Supreme Court and has not shown that cause and prejudice warrant excusing that default.  (*Id.* at pp. 21-22.)  With respect to Ground Two – ineffective assistance of appellate counsel for failure to challenge the sufficiency of the evidence – Respondent argues the claim is procedurally defaulted because Mr. Davenport did not fairly present that claim to the state appellate court in his May 17, 2019 delayed application to reopen.  (*Id.* at pp. 20-21.)  Mr. Davenport does not specifically respond to Respondent's assertion that his claims are procedurally defaulted.  (*See* ECF Doc. 10.)

**1.     Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Id*.  First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id*.  Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review

22

procedures.'"  *Id.* (citing *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990) (finding failure to present a claim to a state court of appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  Thus, even where the exhaustion requirement is technically satisfied because there are no longer state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the failure to have those claims considered in state court may cause a procedural default that bars federal court review of those claims. *Williams,* 460 F.3d at 806.

In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

23

In order to overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### 2.    Whether Ground One was Procedurally Defaulted

In Ground One, Mr. Davenport claims he was denied the effective assistance of trial counsel when his attorneys failed to investigate or raise an NGRI defense. (ECF Doc. 1, p. 14.) It is undisputed that Mr. Davenport raised this argument on direct appeal and again in his *pro se* motion for delayed appeal in the Ohio Supreme Court. (*Id.*; *see also* ECF Doc. 7-1, pp. 51-63, 111-14.) But the Ohio Supreme Court denied Mr. Davenport's motion for delayed appeal on October 19, 2019 without reaching its merits. (ECF Doc. 7-1 p. 142; *see also State v. Davenport*, 132 N.E.3d 698 (Ohio 2019) (table)).

Under the first two prongs of the *Maupin* analysis, this Court must determine whether Mr. Davenport failed to comply with a procedural rule and whether the state enforced that rule. *See* 785 F.2d at 138. The procedural rules for an appeal to the Supreme Court of Ohio required Mr. Davenport to file his appeal "within forty-five days from the entry of the judgment being appealed," S.Ct. Prac.R. 7.01(A)(1)(a)(i), which he failed to do. The procedural rules also permitted Mr. Davenport to file a motion for a delayed appeal, but such motions are granted only at the discretion of the Supreme Court of Ohio. *See* S.Ct. Prac.R. 7.01(A)(4). Mr. Davenport filed a motion for delayed appeal on August 16, 2019 (ECF Doc. 7-1, p. 105), but the court exercised its discretion to deny the motion (*id.* at p. 142; *see also State v. Davenport*, 132 N.E.3d

24

698 (Ohio 2019) (table)). Thus, the evidence establishes that the first two prongs of the *Maupin* analysis have been met.

The third prong of the *Maupin* analysis asks whether the procedural rules establish an adequate and independent state law ground by which the claims may be procedurally defaulted. The Sixth Circuit has confirmed that "Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Accordingly, courts have recognized that such a denial is "an adequate procedural ground to foreclose federal habeas review." *Smith v. Sheldon*, 2018 WL 5795525, * 5 (N.D. Ohio July 26, 2018), *report and recommendation adopted*, 2018 WL 4346577 (N.D. Ohio Sept. 12, 2018); *see also Williams*, 460 F.3d at 806 ("[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"). Thus, the third prong of the *Maupin* analysis has also been met.

Under the fourth prong of the *Maupin* analysis, the final question is whether Mr. Davenport has shown "cause and prejudice" to excuse his procedural default on Ground One of the Petition. It is observed that Mr. Davenport's Traverse only addresses the merits of Ground One, and does not explicitly address procedural default. (*See* ECF Doc. 10.) Nevertheless, the undersigned finds that certain arguments made in the Traverse are directly relevant to the "cause and prejudice" inquiry, in particular his contention that he prepared a timely notice of appeal and submitted it to the MCI mailroom for mailing. (*See id.* at p. 3.)

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the

25

State's procedural rule."  *Id.*  Here, Mr. Davenport asserts that he submitted a notice of appeal

for mailing in August 2018, and that his notice of appeal was not timely filed because of

unspecified actions within the prison mail system.  (ECF Doc. 10 p. 3.)

In *Maples v. Stegall*, the Sixth Circuit held that a *pro se* petitioner had shown cause to

excuse a procedural default where he "attempt[ed] to deliver his petition for mailing in sufficient

time for it to arrive timely in the normal course of events."  340 F.3d 433, 439 (6th Cir. 2003).

The court found that "[t]he prison officials' inaction, which resulted in the application for leave

to appeal being denied because it was filed in an untimely fashion, present[ed] an 'objective

factor material to the defense [that] impeded . . . efforts to comply with the State's procedural

rule.'"  *Maples*, 340 F.3d at 439 (quoting *Coleman*, 501 U.S. at 753).

However, in applying *Maples*, courts have found similar relief unwarranted where the

evidence did not support a finding of "no doubt" that the petition would have arrived on time if

prison officials had acted promptly, and where there was no evidence to suggest that "prison

officials did *not* act promptly" in mailing the relevant materials.  *See Donnal v. Sheets*, No. 3:08

CV 932, 2009 WL 3126404, *3 (N.D. Ohio Sept. 24, 2009) (distinguishing *Maples*) (emphasis in

original); *Lee v. Davis*, No. 07-13782-BC, 2010 WL 3070060, *3 (E.D. Mich. Aug. 3, 2010).

In *Fox v. Turner*, the court addressed a situation similar to this one, where a petitioner

filed a motion for delayed appeal to the Supreme Court of Ohio asserting without evidentiary

support that he had previously submitted a timely appellate filing to the prison mailing system.

*See Fox v. Turner*, No. 3:15 CV 2542, 2017 WL 1379887, *6-7 (N.D. Ohio March 17, 2017),

*report and recommendation adopted*, No. 3:15CV2542, 2017 WL 1365783 (N.D. Ohio Apr. 14,

2017).  The court noted that the petitioner had "produced no evidence that he actually submitted

any appellate filing to the prison mail system . . . such as a cash withdrawal slip for the amount

26

of the postage, or even a copy of any communication from the Supreme Court of Ohio acknowledging receipt of an earlier submission by Fox but rejecting it as untimely." *Id.* at *6. The court further noted that the "record contain[ed] no evidence suggesting that prison officials did not act promptly in mailing any of [the petitioner]'s materials." *Id.* Based on these findings, the court held the petitioner had failed to establish cause to excuse his procedural default, and that the relevant claims in his petition should be dismissed on that basis. *Id.* at *7.

In this case, similarly, the only evidence Mr. Davenport proffers to show that an external cause interfered with his timely filing of an appeal is his own affidavit, which generally asserts that the appropriate papers were prepared and submitted to prison officials "sometime in August 2018" for mailing. (ECF Doc. 7-1, pp. 138-39.) This affidavit is of limited evidentiary value and must be viewed with skepticism for the reasons discussed in the equitable tolling discussion in section III.B.2., *supra*. *See Freeman*, 483 F.App'x. at 58-59; *Wiles*, 2015 WL 4467766, *2. In the context of the procedural default standard, Mr. Davenport has provided no corroborating evidence that his notice of appeal was actually prepared and submitted for mailing in August 2018. Certainly, he has provided no evidence that prison officials received those papers and engaged in activities that interfered with their timely submission to the Supreme Court of Ohio.

For the reasons set forth above, the undersigned concludes that Mr. Davenport has procedurally defaulted on the claim set forth in Ground One of the Petition, and has not met his burden to demonstrate "cause" to excuse that procedural default.

### 3.    Whether Ground Two was Procedurally Defaulted

In Ground Two, Mr. Davenport asserts that his appellate counsel was ineffective because he failed to challenge the sufficiency of the evidence supporting the convictions for aggravated murder, murder, and felonious assault. (ECF Doc. 1, p. 15.) But Respondent argues that Mr.

27

Davenport waived this claim because he failed to raise it in his May 17, 2019 application to reopen his appeal under Ohio Appellate Rule 26(B).  (ECF Doc. 7, p. 20.)  Because successive applications for reopening are not permitted, Respondent argues "no remedy remains available to [Mr.] Davenport to pursue this ineffective assistance of appellate counsel claim," and the claim is procedurally defaulted.  (*Id.* at p. 21 (citing *State v. Twyford*, 106 Ohio St.3d 176 (Ohio 2005).)

A petitioner may procedurally default on a claim in two ways.  First, he may fail "to comply with state procedural rules in presenting his claim to the appropriate state court," after which the claim is defaulted if the state court declines to reach the merits of the issue and the procedural rule is an independent and adequate grounds precluding relief.  *See Williams*, 460 F.3d at 806 (citing *Maupin*, 785 F.2d at 138).  Second, he may fail to "raise [the] claim in state court, and pursue th[e] claim through the state's 'ordinary appellate review procedures.'"  *Id.* (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.")  For Ground Two, both types of procedural default are implicated.

First, the Sixth Circuit has recognized that claims of ineffective assistance of appellate counsel in Ohio "are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell,* 693 F.3d 555, 564 (6th Cir. 2012) (citations omitted).  Indeed, the Ohio Supreme Court has observed that Rule 26(B) "established appellate courts as the venue in which defendants should bring delayed claims of ineffective assistance of appellate counsel." *State v. Davis*, 119 Ohio St. 3d 422, 425 (Ohio 2008).

Here, Mr. Davenport failed to raise the ineffective assistance of counsel claim articulated in Ground Two of the Petition before any Ohio appellate court.  While he did file a Rule 26(B)

motion with the Eighth District Court of Appeals, he did not assert the claim in Ground Two, instead making an entirely distinct argument regarding the actions of his appellate counsel. (*Compare* ECF Doc. 7-1, p. 147 *with* Petition, p. 15.)  He did not raise the claim in Ground Two until his delayed appeal to the Supreme Court of Ohio, where he argued for the first time that his appellate counsel was "ineffective for failing to challenge the sufficiency of evidence with respect to [his] convictions."  (ECF Doc. 7-1, p. 114.)  Thus, Mr. Davenport failed to pursue the claim in Ground Two through Ohio's ordinary appellate review procedures and present the issue at every level of the state courts.  Because the Ohio Supreme Court has observed that Rule 26(B) does not "provide[] a criminal defendant the right to file second or successive applications for reopening," *State v. Williams*, 99 Ohio St. 3d 179, 180 (Ohio 2003), this is not a defect that may be cured.  Accordingly, the undersigned finds Mr. Davenport procedurally defaulted on Ground Two when he failed to raise the claim in his May 2019 Rule 26(B) motion.

Second, even if Mr. Davenport had not procedurally defaulted by failing to assert Ground Two in his Rule 26(B) motion, his later attempt to assert that claim in his delayed appeal to the Supreme Court of Ohio was procedurally defaulted under the four-prong *Maupin* standard for the same reasons articulated in Section III.C.2., *supra*.  Mr. Davenport failed to comply with the procedural rule governing the filing of his appeal to the Supreme Court of Ohio and the court enforced that rule by denying his motion for delayed appeal.  (ECF Doc. 7-1, pp. 105, 142.)  *See* S.Ct. Prac.R. 7.01(A)(1)(a)(i); *State v. Davenport*, 132 N.E.3d 698 (Ohio 2019) (table)).  The court's denial was an adequate procedural ground to foreclose federal habeas review, and Mr. Davenport did not meet his burden to demonstrate "cause" to excuse the procedural default.  Thus, even if it were appropriate for Mr. Davenport to assert the claim in Ground Two for the first time before the Ohio Supreme Court, he procedurally defaulted on that application as well.

For the reasons set forth above, the undersigned concludes that Mr. Davenport has procedurally defaulted on the claim in Ground Two of the Petition, first by failing to raise the claim as required in his Rule 26(B) motion to reopen, and second by procedurally defaulting on the delayed appeal where he attempted to assert the claim for the first time.

### 4.    Whether "Actual Innocence" Supports Relief from Procedural Default

Even where a petitioner cannot demonstrate cause and prejudice sufficient to overcome procedural default, that default can be excused if he shows there will be a "fundamental miscarriage of justice" if his claims are not considered. *See Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).  For an actual innocence claim to be credible, a petitioner must "support his allegations with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324.  He must further "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.  This is intended to permit petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice." *Id.* (internal quotations omitted).  Notably, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Here, Mr. Davenport does not argue he is actually innocent of his crimes.  As to Ground One, he argues that "an insanity defense should have been investigated and pursued by his trial counsel," in particular "because the ample evidence against Petitioner made insanity the only possible defense for him."  (ECF Doc. 10 p. 5.)  As to Ground Two, he argues his appellate counsel "was ineffective for failing to challenge the sufficiency of evidence" with respect to his

convictions because "[a]lthough Petitioner admitted to setting the fire, he never admitted to police (or anyone else) that he 'purposely' caused the victim's death.'"  (ECF Doc. 1, p. 15.)

Not only does Mr. Davenport fail to argue that he was actually innocent of his crimes, he also fails to offer new reliable evidence that was not presented at trial to establish that he is factually innocent.  Thus, he has not met his burden to demonstrate that his procedural default should be excused due to a finding of "actual innocence."

For all of the reasons set forth above, the undersigned finds that Mr. Davenport has procedurally defaulted the claims in Grounds One and Two of the Petition, and has not demonstrated a basis to excuse those defaults.  Accordingly, the undersigned recommends the District Court **DISMISS** Grounds One and Two as procedurally defaulted.

## IV.    Recommendation

For the reasons stated above, the undersigned recommends that the Court **DISMISS** the Petition with prejudice as untimely filed and procedurally defaulted.

Dated: January 5, 2023

  _/s/ Amanda M. Knapp_
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

31